******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CRYSTAL HORROCKS ET AL. *v.*
KEEPERS, INC., ET AL.
(AC 44321)

Alvord, Cradle and Flynn, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendants for, inter alia, unpaid wages. In their complaint, the plaintiffs, who worked as exotic dancers at a gentlemen's club that was owned and operated by the defendants, alleged that they were improperly characterized as independent contractors as opposed to employees, and, as a consequence, they were unable to obtain workers' compensation benefits, an appropriate minimum wage and overtime pay, and were forced to pay the defendants certain gratuities that they received from the club's customers. The trial court thereafter ordered a stay of the proceedings pending arbitration pursuant to a mandatory arbitration clause in the agreement that governed the employment relationship between the parties. The parties then proceeded to arbitration during which the defendants submitted incomplete written records concerning the number of hours that the plaintiffs worked, and the plaintiffs provided oral testimony on that issue. In his initial award, the arbitrator determined that the plaintiffs were employees rather than independent contractors. In a subsequent award, the arbitrator determined that the parties' employment agreement was illegal and unenforceable because it was an attempt to circumvent statutory wage and hourly requirements, and that the plaintiffs were entitled to be paid the appropriate minimum wage and overtime for the hours they worked during a certain two year period. The arbitrator awarded the plaintiffs $113,560.75 in damages, as well as attorney's fees and costs. Thereafter, the trial court granted the plaintiffs' application to confirm the arbitration awards and denied the defendants' motion to vacate the awards. On the defendants' appeal to this court, *held* that the trial court did not err in rejecting the defendants' claim that the arbitrator's calculation of damages awarded to the plaintiffs constituted a manifest disregard of the law because the defendants had the right to present evidence of the precise amount of work the plaintiffs performed and the arbitrator should have based his damages calculation on the defendants' written records, not on the plaintiffs' oral testimony; in the present case, the defendants were not prevented from submitting evidence to prove the precise number of hours worked by the plaintiffs but, rather, they submitted written records that the arbitrator determined were deficient, and, therefore, in light of that deficiency, the arbitrator properly considered the plaintiffs' oral testimony in calculating the damages award.

(*One judge concurring separately*)

Argued January 13—officially released November 1, 2022

*Procedural History*

Action to recover damages for, inter alia, unpaid wages, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the defendants' motion to stay the proceedings pending arbitration; thereafter, the court, *Abrams, J.*, granted the plaintiffs' application to confirm the arbitration awards, denied the defendants' motion to vacate the awards and rendered judgment for the plaintiffs, from which the defendants appealed to this court. *Affirmed.*

*Stephen R. Bellis*, for the appellants (defendants).

*Kenneth J. Krayeske*, for the appellees (plaintiffs).

*Opinion*

CRADLE, J. This appeal stems from a dispute between the plaintiffs, Crystal Horrocks, Yaritza Reyes, Dina Danielle Caviello, Jacqueline Green, Sugeily Ortiz and Zuleyma Bella Lopez, and the defendants, Keepers, Inc., and Joseph Regensburger,[1] as to the proper characterization of the plaintiffs as independent contractors, instead of employees, for services rendered as exotic dancers at a gentlemen's club owned and operated by the defendants. The defendants appeal from the judgment of the trial court denying their motion to vacate, and granting the plaintiffs' application to confirm, arbitration awards finding that the plaintiffs were employees, not independent contractors, and awarding them damages. We affirm the judgment of the trial court.

The trial court set forth the following relevant procedural history. "The plaintiffs . . . brought suit against the defendants . . . for alleged violations of the relevant state and federal minimum wage and overtime laws. As alleged in the plaintiffs' complaint, each of the plaintiffs worked as an exotic dancer at Keepers Gentlemen's Club located in Milford. This establishment is owned and operated by the defendants. The plaintiffs allege[d] that, during their time working for the defendants, they were improperly characterized as independent contractors as opposed to employees. According to the plaintiffs, this improper employment relationship . . . caused them, inter alia, to be unable to obtain needed workers' compensation benefits, as well as not be paid the appropriate minimum wage and overtime pay. The plaintiffs also contend[ed] [that] they were illegally forced to pay the defendants certain gratuities that they received from customers. Accordingly, the plaintiffs' eight count complaint allege[d] the following causes of action: (1) count one—failure to pay minimum wage in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206; (2) count two—failure to pay overtime in violation of the FLSA, 29 U.S.C. § 207; (3) count three—unlawful deductions from wages and/or gratuities in violation of the FLSA; (4) count four—failure to pay minimum wage in violation of General Statutes § 31-60; (5) count five—failure to pay overtime in violation of General Statutes § 31-76b; (6) count six—unlawful deductions from wages in violation of General Statutes § 31-71e; (7) count seven—unjust enrichment; and (8) count eight—breach of implied contract.

"On May 26, 2015, the defendants filed a motion to dismiss and/or stay this action . . . on the ground that the employment relationship between the parties was governed by an entertainment lease agreement [agreement] that contained a mandatory arbitration clause. The court, *Wilson, J.*, denied the motion to dismiss . . . on October 13, 2015, but it also ordered a stay of the proceedings pending arbitration on January 4, 2016 . . . . [T]he parties [thereafter] proceeded to an arbi-

tration . . . . On July 18, 2019, [the arbitrator] issued his initial arbitration award wherein he determined that the plaintiffs were appropriately characterized as employees as opposed to independent contractors. Subsequently, on March 17, 2020, [the arbitrator] issued a further arbitration award where he determined, inter alia, that the . . . agreement was illegal and unenforceable because it was an attempt to circumvent statutory wage and hour requirements, and, as a result, the plaintiffs were entitled to be paid the appropriate minimum and overtime wage for the hours they worked for the period between April 14, 2013, to April 14, 2015. [The arbitrator] awarded the plaintiffs $113,560.75 in damages. [The arbitrator] further denied the plaintiffs' request for double liquidated damages because he found [that] the defendants acted with a good faith belief they were complying with the law, but he also gave the plaintiffs $85,000 in attorney's fees and $2981.16 in costs." (Footnotes omitted.)

On March 17, 2020, the plaintiffs filed an application to confirm both the July 18, 2019 and the March 17, 2020 arbitration awards. On April 7, 2020, the defendants filed a motion to vacate the arbitration awards, claiming that (1) the arbitrator exceeded his authority because, when he determined that the agreement was void and unenforceable, the arbitration clause within the agreement was also rendered unenforceable, (2) the arbitrator's award of attorney's fees was improper and should be vacated because the arbitrator relied on the current revision of General Statutes § 31-72 as opposed to the iteration of the statute that was in existence between April, 2013, and April, 2015, and (3) it was incorrect for the arbitrator to rely on oral testimony of the plaintiffs regarding how much time they had worked. By way of a memorandum of decision filed on October 2, 2020, the court, *Abrams*, *J.*, granted the plaintiffs' application to confirm the arbitration awards and denied the defendants' motion to vacate the awards. This appeal followed.

On appeal, the defendants claim that the trial court erred by failing to conclude that the arbitrator's calculation of damages constituted a manifest disregard of the law because the arbitrator "should have based [that calculation] on the written records [presented by the defendants] not [on] a verbal estimate of the plaintiffs.[2] We disagree.

"[T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 161, 252 A.3d 317 (2020). "Under this highly deferential standard . . . our precedent instructs that three elements must be satisfied before we will vacate an arbitration award on the ground that

the [arbitrator] manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is [well-defined], explicit, and clearly applicable. . . . [E]very reasonable presumption and intendment will be made in favor of the [arbitration] award and of the arbitrators' acts and proceedings." (Citations omitted; internal quotation marks omitted.) Id., 161–62.

In setting forth the basis for the calculation of his award of damages, the arbitrator recounted the evidence presented by the parties, including evidence of the record keeping procedures used by the defendants to record the hours worked by the plaintiffs. The defendants submitted that they had used two systems to account for attendance. First, they used a sort of "punch card" system, whereby the identification card of each plaintiff was photocopied at the beginning of each shift, and from those "punch cards," the administrative staff would create a "daily business recap." After that recap was produced each day, the punch cards were discarded. The defendants also utilized a biometric system that scanned the plaintiffs' fingerprints at the beginning of their shifts. Due to a system malfunction, however, the records from that system were lost. Although the plaintiffs did not have written records of the hours they had worked, the arbitrator considered their oral testimony regarding those hours, along with the incomplete records of the defendants, to calculate damages.

Before the trial court, the defendants challenged the damages awarded by the arbitrator on the ground that they constituted a manifest disregard of the law. In rejecting the defendants' argument, the court explained that, "[a]lthough the defendants attempt to frame this portion of their motion as an attack on the overly speculative nature of [the arbitrator's] damages calculation, in reality, the defendants believe that [the arbitrator] erred when he credited the plaintiffs' oral testimony over certain written documentation offered by the defendants." The court referred to the arbitrator's assessment of the evidence submitted by the parties, explaining that the arbitrator had concluded that the defendants' record keeping was "inadequate and incomplete" and, therefore, that, "in calculating [the] plaintiffs' damages, [he] . . . necessarily relied on both the plaintiffs' testimony and the partial records of the defendants." (Internal quotation marks omitted.) On that basis, the court noted that the arbitrator "indicate[d] that he examined the defendants' attendance records, but he found that they were not completely accurate. Therefore, he also relied on the plaintiffs' oral testimony in order to determine a complete total of the number of hours that they worked." The court concluded: "This

finding is more than substantial evidence to support [the arbitrator's] damages calculations, and it is not the role of this court to substitute its judgment for that of the arbitrator. Consequently, the court also rejects this argument as a valid basis to grant the defendants' motion to vacate.''

On appeal to this court, the defendants again challenge the damages awarded to the plaintiffs on essentially the same ground that they raised before the trial court. Specifically, the defendants contend that ''the arbitrator disregarded the law that the defendants have the right to present evidence of the precise amount of work the plaintiffs performed.'' The defendants claim that the court ''should have based the hours worked on the written records of the employer, not [on] a verbal estimate by the plaintiffs.''[3] As aptly recounted by the trial court, the arbitrator considered the evidence presented by the defendants but concluded that the defendants' record keeping was ''inadequate and incomplete'' and, consequently, ''relied on both the plaintiffs' testimony and the partial records of the defendants'' in calculating the damages that he awarded to the plaintiffs. Contrary to the defendants' assertion, they were not prevented from submitting evidence to prove the number of hours worked by the plaintiffs, but the evidence that they did present, which was considered by the arbitrator, was deficient. Faced with that deficiency, the arbitrator considered the oral testimony of the plaintiffs. It was not improper for the arbitrator to do so. Accordingly, the court did not err in rejecting the defendants' claim that the arbitrator disregarded the law in calculating the damages awarded to the plaintiffs, and thus did not err in granting the plaintiffs' application to confirm, and denying the defendants' motion to vacate, the arbitration awards.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

[1] Regensburger is the president of Keepers, Inc., and was sued in both his individual capacity and as an agent, principal or representative of Keepers, Inc. He has been involved throughout both the arbitration and the present case. The arbitrator's awards, which were later confirmed by the trial court's judgment, were against both defendants and made no mention of apportionment.

[2] The defendants also claim on appeal that the trial court erred by not holding that the arbitrator's awards violated a legitimate public policy of the freedom to contract, and by failing to sever the enforceable and unenforceable terms of the agreement and to determine that the defendants were entitled to a credit against wages for the entertainment fees paid to the plaintiffs. Because the defendants did not raise these claims before the trial court, we decline to review them. See *Board of Education* v. *Commission on Human Rights & Opportunities*, 212 Conn. App. 578, 590, 276 A.3d 447 (''[t]his court will not review issues of law that are raised for the first time on appeal'' (internal quotation marks omitted)), cert. denied, 345 Conn. 902, A.3d (2022); see also Practice Book § 60-5 (reviewing court not bound to consider claim unless it was distinctly raised at trial).

[3] We note that, at oral argument before this court, counsel for the defendants acknowledged that it was not ''improper for the arbitrator to credit some of the plaintiffs' [oral] testimony.''